**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:25-CR-00157-CHB-MAS-5 |
| ) | |
| **ELIZABETH HARRISON,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

Defendant Elizabeth Harrison, by all accounts, has reformed her criminal behavior in the past five months since attending substance use treatment and grieving the death of her oldest son. However reformed Harrison may be at this juncture, though, her criminal history tells a different story. That story is a tale of two decades of thefts, drug possession, drug trafficking, aiding others in evading law enforcement, and failing to appear in Court. For those reasons, discussed in more detail below, the Court will detain Harrison pretrial.

## I. ANALYSIS

Harrison is charged with conspiracy to distribute five grams or more of methamphetamine and fentanyl in violation of 21 U.S.C. § 846. [DE 1]. At the initial appearance, the United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C). The Court conducted a detention hearing on February 10, 2026.

A.  **LEGAL STANDARD**

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Through the testimony of four witnesses and proffer, Harrison rebutted the presumption as to nonappearance and danger. Accordingly, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991);

*United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors drive the analysis.

**B.    HARRISON'S DANGER TO THE COMMUNITY**

The § 3142(g) factors drive the analysis. Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and

seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g).

1. **Harrison's History and Characteristics**

The Court must consider many aspects of Harrison's background in making the decision to release or detain her.  Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]"  18 U.S.C. § 3142(g)(3).

Harrison is a 39-year-old Central Kentucky native.  Harrison lives in Irvine, Kentucky, with her mother and minor children, in a home she is renting to own. [Pretrial Services Report at 1-2].  If released, Harrison would return to that residence.

Harrison has been unemployed since March 2025, which favors detention. [Pretrial Services Report at 2].  *See United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention).  Prior to March 2025, Harrison operated an "online sales" business out of her home for five years.  [Pretrial Services Report at 2-3]. Harrison reported occasional use of cannabinoids and one-time use of heroin in July 2025; however, the Court notes Harrison participated in a 45-day inpatient substance abuse program and Yonder Behavioral Health from July to September 2025.  [Pretrial Services Report at 4].

In support of her argument for release, Harrison presented the testimony of her son, Demetrius Thomas, her friend Dr. Chastity Franklin, her friend and former roommate at Yonder Behavioral Health, Aubrey Carter, and her former behavioral health technician from Yonder Behavioral Health, Richard Blackburn. Thomas testified that Harrison has lived in the Irvine area for more than ten years, and at her current residence for most of that time. He stated that his brother, Harrison's oldest son, recently passed away and the family is in the grieving process. Because of this grief, and his mother's desire to support his younger sisters through this sensitive time, Thomas testified Harrison would be motivated to stay at home and would not present a flight risk.

Blackburn testified that he worked with Harrison during the six weeks that she received inpatient treatment for substance use; Carter was Harrison's roommate during part of that inpatient treatment program. Both testified to Harrison's commitment to sobriety and her growth during the program. Blackburn and Carter both discussed Harrison's good character and lack of danger they believe she poses to the community. Finally, Harrison's friend Franklin testified. Franklin discussed that she has known Harrison since their teen years. She understands Harrison has struggled with substance use and poor life choices but stated Harrison has changed of late and is making progress towards a sober, productive life.

Harrison has a lengthy criminal history that started in 2004 when she was 18 years old. From 2004 through 2018, Harrison had a minor criminal conviction almost every year, primarily theft charges and traffic offenses. [Pretrial Services Report at

4-7]. In 2018, Harrison was convicted for resisting arrest and hindering prosecution. The charge arose from Harrison attempting to assist her boyfriend in evading police apprehension. Harrison was similarly charged in 2025 with complicity to escape in the second degree, a charge that arose from an incident with her brother that is still pending and Harrison claims was a misunderstanding. Harrison incurred drug charges in September 2022, July 2023, May 2025, and September 2025. [Pretrial Services Report at 12-14]. Some of those are still pending. Additionally, the 2023 and 2025 charges all occurred while Harrison was on state bond or probation. Finally, Harrison has failed to appear in court as directed on seven prior occasions. [Pretrial Services Report at 4-13]. Numerous failures to appear in the past imply that Harrison is unlikely to appear for court in this case as well. *See United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating) and *United States v. Gumora*, 2020 WL 1862361, at *7 (S.D.N.Y. Apr. 14, 2020) (finding that "numerous notations where warrants were issued for [ ] failure to appear" suggested flight risk).

### 2. The Nature and Circumstances of the Offense Charged

The BRA requires Courts to consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]" 18 U.S.C. § 3142(g)(1). The United States did not offer any details of the crime charged other than to brand Harrison as a "significant dealer" of methamphetamine and fentanyl. The United States pointed out that the Indictment ascribes responsibility through the conspiracy to Harrison for distributing over five grams of methamphetamine and fentanyl. The United States described the conspiracy as a "toxic mix of

methamphetamine, fentanyl, and firearms." Congress has assigned a special category of presumed detention to narcotics trafficking crimes, reflecting the seriousness of those crimes' dangerousness to the community.

### 3. The Weight of the Evidence of Dangerousness

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has significant criminal history that includes committing crimes on state release and numerous drug trafficking charges.

The heavy weight of Harrison's dangerousness is most evident in her repeated commission of crimes while on state bond or probation. These offenses indicate Harrison is unwilling to conform her behavior to be within the bounds of the law even when she is subject to release conditions, violation of which could land her back in jail. Harrison's alleged willingness to traffic in large quantities methamphetamine and fentanyl while on bond or probation demonstrates disregard for both the law and the safety of the community.

### 4. The Nature and Seriousness of Danger Posed by Release

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As discussed above, the United States stressed Harrison's history of committing crimes while living at her current address, while subject to state release conditions, and of failing to appear in court as directed.

The Court would be remiss not to mention Harrison's current circumstances appear much improved from her life prior to attending substance use treatment. Harrison's codefendant is incarcerated. Harrison claims he was a critical piece of her criminal pursuits. Harrison, through argument and testimony, demonstrated that she has turned her life around in the past five months, and is committed to her sobriety and faith.

Nonetheless, Harrison has engaged in many instances of criminality that posed a risk of danger to another person or the community. First, Harrison has a history of possessing or selling narcotics. Second, Harrison's has a history of using false identification, resisting arrest, and assisting others in escape or evading arrest. Finally, Harrison has a history of failures to appear.

Weighing all the totality of the evidence before it, the Court finds there simply too much drug trafficking and disregard for court-imposed conditions in Harrison's still-recent history to release her. Coupled with the allegations in this case, and the Court concludes Harrison poses a serious risk to the community through selling narcotics (while on bond) and then failing to appear in court.

C.   **NONAPPEARANCE RISK**

As discussed at length above, Harrison has failed to appear in court on at least seven prior instances. She also assisted another person in evading arrest and is charged with yet another instance of assisting someone escape. Importantly, it appears the most recent (pending) charge for assisting escape occurred during or after her stay at the substance use treatment facility. Harrison presented sufficient evidence to persuade the Court that she is unlikely to flee the jurisdiction altogether.

Based on the facts in the bond report, however, the United States easily met its burden of preponderant evidence that Harrison is likely to fail to appear in court.

## II.   CONCLUSION

On balance, the Court finds that the BRA demands pretrial detention in this case. As discussed above, the United States demonstrated by a preponderance of the evidence that Harrison is unlikely to appear as required. The Court also finds that the United States proved by clear and convincing evidence that Harrison is an unmitigable danger to the community or others based on her criminal history and the charges herein.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **GRANTED** and directs that Harrison be detained pending resolution of the allegations against her.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 3rd of March, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY